**In re James Madison NABORS and Julia Nabors, Relators.**

**No. 14-08-00380-CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 16, 2009.

---

David Perwin, Rosenberg, for Appellants.

Sarah Stallberg, Houston, Trevor A. Woodruff, Austin, for Appellees.

Panel consists of Justices FROST, SEYMORE, and GUZMAN.

## MAJORITY OPINION

CHARLES SEYMORE, Justice.

In this original proceeding, relators, James Madison Nabors and Julia Nabors, seek a writ of mandamus ordering the respondent, the Honorable Michael Schneider, to transfer the underlying case from Harris County to Fort Bend County. We conditionally grant the writ.

### BACKGROUND

On May 16, 2006, the Texas Department of Family Protective Services ("TDFPS") placed T.D.P. and D.E.P. with the Naborses, who became their foster parents. On August 22, 2007, the trial court signed a final order in a suit to terminate the parental rights of T.D.P. and D.E.P.'s biological parents. TDFPS was named the sole managing conservator. On October 26, 2007, the children were removed from the Naborses' home on allegations of abuse. TDFPS informed the Naborses that "[b]ased on the information gathered, it was determined that you had no role and the investigation was closed." The children were not returned to the Naborses' home.

On November 9, 2007, the Naborses filed, in Harris County, a petition for adoption and motion to modify the parent-child relationship with an accompanying motion to transfer venue to Fort Bend County.[1] In their motion, the Naborses alleged that Fort Bend County has been the children's principal residence and "has been in that county during the six-month period preceding the commencement of this suit."[2] On December 19, 2007, TDFPS filed an answer. Prior to a hearing on February 4, 2008, TDFPS filed a response to the motion to transfer supported by an affidavit. The trial court denied the motion to transfer venue.[3]

1. The original petition for adoption and the motion to transfer venue were filed under the original cause number—2005–07431J. On November 12, 2007, the Harris County District Clerk notified the Naborses' attorney that it was assigning a new cause number to the petition for adoption—2007–69035. The Naborses filed another motion to transfer under the new cause number. The motion to modify the parent-child relationship and the accompanying motion to transfer were filed under the original cause number—2005–07431J. It appears that the trial court proceeded on the motion to transfer filed with the motion to modify.

2. The Naborses averred that the children's principal place of residence *has been* Fort Bend County during the six month period preceding commencement of the suit. They did not allege or aver that the children currently reside in Fort Bend County.

3. We have not found the trial court's written order denying the Naborses' motion to transfer venue in the appellate record. However,

## STANDARD OF REVIEW

In order to obtain mandamus relief, the relator must show that the trial court clearly abused its discretion, and the relator has no adequate remedy by appeal. *In re Sw. Bell Tele. Co., L.P.*, 226 S.W.3d 400, 403 (Tex.2007) (orig.proceeding). A trial court has no discretion in determining what the law is or applying the law to facts. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992). The transfer of a suit-affecting the child-parent relationship to a county where the child has resided for more than six months is a mandatory ministerial duty. *Proffer v. Yates*, 734 S.W.2d 671, 673 (Tex.1987). Therefore, a writ of mandamus is available to compel the mandatory transfer of a suit affecting the parent-child relationship. *Id.* at 672.

## MOTION TO TRANSFER VENUE

Because the 315th District Court of Harris County was the court of continuing jurisdiction based on the suit to terminate parental rights, the Naborses filed their motion to modify, petition for adoption, and motions to transfer in that court. *See* Tex. Fam.Code Ann. §§ 103.001(a) (Vernon 2002) (an original suit shall be filed in the county where the child resides unless another court has continuing exclusive jurisdiction); 155.001 (Vernon 2002) (a court acquires continuing, exclusive jurisdiction over the matters provided for by this title in connection with a child on the rendition of a final order). The Naborses sought to transfer the case to Fort Bend County on the assertion that the children had resided there for more than six months preceding the filing of the motion to modify and the petition for adoption. Section 155.201 of the Texas Family Code provides for the mandatory transfer of a proceeding on a motion to modify as follows:

> (b) If a suit to modify or a motion to enforce an order is filed in the court having continuing, exclusive jurisdiction of a suit, on the timely motion of a party the court shall, within the time required by Section 155.204, transfer the proceeding to another county in this state if the child has resided in the other county *for six months or longer*.

Tex. Fam.Code Ann. § 155.201(b) (Vernon Supp.2008) (emphasis added).

The Naborses contend the trial court had a ministerial duty to sever and transfer all proceedings pertaining to the children to Fort Bend County because the children had lived with them in Fort Bend County for the requisite length of time. TDFPS contends the Naborses did not present any evidence to support their motion to transfer venue to Fort Bend County, arguing that the Naborses failed to submit an affidavit that contained sufficient averments.

## VENUE RULES

TDFPS contends the rules governing transfer of venue in a suit affecting parent-child relationship are a combination of the Texas Family Code, the Texas Civil Practice & Remedies Code, and the Texas Rules of Civil Procedure. Relying on the venue statute found in Chapter 15 of the

---

at the end of the hearing, the trial court stated, "Okay. Then I'm going to deny your motion to transfer ... I am going to not transfer the case." Texas Rule of Appellate Procedure 52.3(j)(1)(A) requires "a certified or sworn copy of any order complained of, *or any other document showing the matter complained of ...*" Tex.R.App. P. 52.3(j)(1)(A) (emphasis added). An oral ruling on the record satisfies the requirements of Rule 52.3(j)(1)(A). *In re Bill Heard Chevrolet, Ltd.*, 209 S.W.3d 311, 314 (Tex.App.-Houston [1st Dist.] 2006, orig. proceeding); *In re Bledsoe*, 41 S.W.3d 807, 811 (Tex.App.-Fort Worth 2001, orig. proceeding); *In re Hamrick*, 979 S.W.2d 851, 852 n. 3 (Tex.App.-Houston [14th Dist.] 1998, orig. proceeding).

Texas Civil Practice & Remedies Code and the Texas Rules of Civil Procedure, TDFPS asserts that venue questions are decided solely on the pleadings and affidavits, not on live testimony. *See* Tex. Civ. Prac. & Rem.Code Ann. § 15.064 (Vernon 2002) ("The court shall determine venue questions from the pleadings and affidavits."); *Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 269 n. 4 (Tex.1992) (orig.proceeding) (explaining that live testimony may not be considered at a venue hearing under Rules 87 and 88 of the Texas Rules of Civil Procedure). However, transfer procedures under the Texas Family Code are the *exclusive* mechanism for transferring suits affecting the parent-child relationship and were designed to supplant the regular venue rules.[4] Therefore, we need not consider the Naborses' motions to transfer venue under other statutes or the Rules of Civil Procedure. *See Mendez,* 761 S.W.2d at 521 (rejecting contention that trial court should have considered motion to transfer, which was filed in contempt proceeding for failure to pay child support, under Rule 86 of the Texas Rule of Civil Procedure and Chapter 15 of the Texas Civil Practice and Remedies Code).

■ Section 155.204 of the Family Code provides that the "motion must contain a certification that all other parties, including the attorney general, if applicable, have been informed of the filing of the motion." Tex. Fam.Code Ann. § 155.204(a) (Vernon 2002). Section 155.204 does not require that the motion be verified or supported by an affidavit. *See In re Sanchez,* 1 S.W.3d 912, 915 (Tex. App.-Waco 1999, orig. proceeding) ("[A] motion to transfer [under section 155.204] does not have to be verified nor must it be supported by an affidavit.").[5]

## THE CHILDREN'S RESIDENCE

At the hearing on the motion to transfer, relator, James Nabors, testified that TDFPS placed the children with him and his wife on May 16, 2006, and the children resided with them in Fort Bend County for seventeen months. The Naborses contend TDFPS failed to controvert their venue averments.

■ TDFPS contends its affidavit controverts the Naborses' venue facts. We note that TDFPS did aver that the children were "not currently residing with the Naborses, and have not since October 26, 2007." However, there is no dispute that the children resided in Fort Bend County for approximately seventeen months before TDFPS removed them from the Naborses' household. TDFPS contends that it designated the Naborses' home as the children's residence on a temporary basis only. The TDFPS bases a major portion of its venue argument on the assertion that the "principal residence" of the children has always been Harris County because

4. *See Leonard v. Paxson,* 654 S.W.2d 440, 441 (Tex.1983) (orig.proceeding); *In re Leder,* 263 S.W.3d 283, 286 (Tex.App.-Houston [1st Dist.] 2007, orig. proceeding); *Kirby v. Chapman,* 917 S.W.2d 902, 907 (Tex.App.-Fort Worth 1996, no writ); *Martinez v. Flores,* 820 S.W.2d 937, 938 (Tex.App.-Corpus Christi 1991, orig. proceeding); *Johnson v. Pettigrew,* 786 S.W.2d 45, 48 (Tex.App.-Dallas 1990, no writ); *Mendez v. Attorney Gen. of Tex.,* 761 S.W.2d 519, 521 (Tex.App.-Corpus Christi 1988, no writ); *Beyer v. Diaz,* 585 S.W.2d 359, 360 (Tex.Civ.App.-Dallas 1979, no writ).

5. The Naborses prepared and filed an affidavit in support of their petition for writ of mandamus. However, we do not consider this affidavit because it was not submitted to the trial court. *Cf. Nguyen v. Intertex, Inc.,* 93 S.W.3d 288, 293 (Tex.App.-Houston [14th Dist.] 2002, no pet.) ("The attachment of documents as exhibits or appendices to briefs is not formal inclusion in the record on appeal and, therefore, the documents cannot be considered.").

section 103.001(c) provides that a "child resides in the county where the child's parents reside." Tex. Fam.Code Ann. § 103.001(c). TDFPS contends it should be denominated the "parent" of the children because it was appointed sole managing conservator.

However, the Texarkana and the Amarillo Courts of Appeals have rejected similar arguments made by TDFPS. First, *In re Kerst,* 237 S.W.3d 441, 442 (Tex.App.-Texarkana 2007, orig. proceeding), presents a somewhat similar scenario in which TDFPS sought and obtained termination of the parental rights. TDFPS placed the children with the Kersts who lived in Bowie county. *Id.* After a disagreement arose between TDFPS and the Kersts, the children were removed from the Kersts' home. *Id.* Subsequently, the Kersts filed a motion to modify the conservatorship and motion to transfer venue from Hopkins county (where the court had continuing jurisdiction) to Bowie County. *Id.* In their motion, the Kersts alleged that the children had lived in Bowie County for more than six months. *Id.* It was undisputed that the children had lived with the Kersts, in Bowie County, for approximately seventeen months prior to the date the Kersts filed their motion to transfer venue, which the trial court denied. *Id.*

The court of appeals rejected TDFPS's assertion that the Legislature never intended for the proceedings to be transferred to the county where the foster parents resided with the children. *Id.* at 443–44. TDFPS argued that, until the statute was amended, foster parents had no standing to assert these rights and, when the Legislature granted such standing, it was not contemplated that foster parents would be allowed to seek and obtain a transfer to the county where they resided with the children. *Id.* But, the court of appeals concluded that the statute requiring the mandatory transfer of a suit affecting the parent-child relationship to the county where the child has resided for six months or longer is straightforward and clear, and declined to accept TDFPS's invitation to surmise that the statute has some other meaning. *Id.* at 444.

The appellate court further rejected TDFPS's argument that the children had not "resided" in Bowie County, but were placed there merely for foster care, reasoning "[i]t cannot be argued that they were only temporarily absent from another, more permanent residence, since these children had no other home or residence." *Id.* at 444–45. The court of appeals held that the children had resided in Bowie County for more than six months and directed the trial court to transfer the proceedings. *Id.* at 445.

Second, *In re Gore* presents the same scenario in which the original court of continuing jurisdiction in Potter County named TDFPS the managing conservator. No. 07–07–0290–CV, 2007 WL 2403366, at *1 (Tex.App.-Amarillo Aug. 23, 2007, orig. proceeding) (mem.op.). TDFPS placed the child in the foster care of the Gores in Swisher County. *Id.* After the child had lived with the Gores for more than six years, the Gores filed a petition seeking termination of the parent-child relationship between the child and her parents in the court in Potter County. *Id.* After the case had been transferred to Swisher County, TDFPS sought and received a discretionary transfer of the case back to Potter County. *Id.* Because it was undisputed that the child had resided in Swisher County more than six months, the court of appeals held that Swisher County was the only county of proper venue and the case should not have been transferred back to Potter County. *Id.* at *2.

Similar to *Kerst* and *Gore,* it is undisputed that the children had resided in Fort

Bend County with the Naborses for more than six months preceding the date the motion to modify and petition for adoption were filed. Therefore, we reject TDFPS's argument that the children resided in Harris County and their residence in Fort Bend County was temporary. *See Kerst,* 237 S.W.3d at 444–45.

### CONVENIENCE OF THE PARTIES

The Naborses pleaded, alternatively, that the district court in Fort Bend County would be more convenient because all parties and witnesses reside in Fort Bend County. Section 155.202(b) provides that, "[f]or the convenience of the parties and witnesses and in the interest of justice, the court, on the timely motion of a party, may transfer the proceeding to a proper court in another county in the state." Tex. Fam. Code Ann. § 155.202(b) (Vernon 2002). At the hearing, the trial court stated that the motion to transfer was discretionary, and it was denied. However, as we have concluded, the issue in this case is mandatory venue transfer because it is undisputed that the children lived with the Naborses in Fort Bend County for six months or longer. *See Kerst,* 237 S.W.3d at 443 (rejecting TDFPS's argument that forum non conveniens may be relied upon to deny mandatory transfer of proceedings).

### CONSTRUCTION OF SECTION 155.201(B)

TDFPS focused its appellate argument on the contention that this court should deny the petition because relators failed to comply with applicable rules of procedure. In other words, TDFPS argues that the trial court could not consider anything other than the contentions in the Naborses' motion to transfer venue supported by timely filed affidavits. We have addressed those arguments, however, the dissent opines that our disposition violates certain venue provisions in the family code because the children did not reside in Fort Bend County on the day or at the moment the Naborses filed their motion to transfer venue. *See post* at 199. We respectfully disagree.

The children resided with the Naborses for approximately seventeen months before TDFPS moved them to Harris County. They were placed in Harris County approximately two weeks before the Naborses filed their motion to transfer venue. Obviously, at the time of the hearing, the children had resided in the "other county for six months or longer." Tex. Fam.Code Ann. § 155.201(b); *see also Kerst,* 237 S.W.3d at 445 n. 6. ("Generally, one designates residence by selecting a home and living in it. Here, the Department designated that the children would live at the Kersts' home, where they remained for seventeen months. It was their principal residence for the six-month period preceding the commencement of the suit to modify.").[6]

---

**6.** The dissent opines that our interpretation conflicts with the plain language in section 155.201(b) because the Legislature envisioned there would be "only one other county." *See post* at 206. Our colleague erroneously suggests the majority's interpretation contemplates that a transfer of venue includes any county in which a child had resided for a period of six months no matter how remote in time to commencement of the proceeding. Contrary to the dissent's criticism, our interpretation limits rather than "promotes" forum shopping. Apparently, in applying section 155.201(b), the dissent would conclude that a party could thwart a motion to transfer venue by removing children from one county to the other for few days or even a few hours. We disagree. If, as the dissent suggests, a motion to transfer should be denied because a child has resided in the county where the court has continuing jurisdiction for a single day, then the result may be altered by a battle or race to remove a child from one county to the other. Our dissenting colleague would allow the TDFPS to venue shop from one county to the other by exercising its authority

In support of her proposed interpretation of venue provisions in the family code, our dissenting colleague analyzes and compares the verb tense *"has resided"* in the last phrase in the provision for mandatory venue under section 155.201(b) with the verb tense *"resides"* in the provision for discretionary venue under section 155.202(a). The dissent relies heavily on verb tense employed by the Legislature in section 155.202(a)—the discretionary venue transfer provision—to support her conclusion that a section 155.201(b) mandatory transfer is necessarily based on an allegation that " 'the child *resides* in another county.' " *See post* at 202–03. First, in interpreting the express provisions of section 155.201(b), we have not supplied additional words.[7] In section 155.201(b), the Legislature conspicuously did not express any requirement that the children presently or currently reside in the other county. If the Legislature had desired that the child currently reside in the other county at the time a proceeding is commenced, it could have included such language. Second, any attempt to interpose additional requirements for mandatory venue by suggesting that legislative intent is implicit because of a verb tense employed in the discretionary transfer subsection, strains the rules of statutory construction.[8] Under the plain language in section 155.201(b) the Legislature does not require

that the children *currently reside* in the other county, only that they *"have resided"* there for six months or longer when the modification suit is filed. *See id.*[9]

The majority chooses to follow the Legislature's clear instructions for determining the county of the children's residence prescribed as follows:

### ■ Determining County of Child's Residence

In computing the time during which the child has resided in a county, the court may not require that the period of residence be continuous and uninterrupted but shall look to the child's principal residence during the six-month period preceding the commencement of the suit.

Tex. Fam.Code Ann. § 155.203 (Vernon Supp.2008)

Our interpretation and application of the above language properly focuses on determination of the children's *"principal residence"* during the six month period. We duly regard the Legislature's instructions not to focus on time and location of the children on a particular day. In determining the county of principal residence we focus on elements of permanency for the children which are critical to establishing residency for venue purposes. *See Mar-*

---

to remove a child from any foster home in advance of adoption proceedings.

7. Notwithstanding the concerns of our dissenting colleague, there is no language militating that the children reside in the other county *"throughout"* the six month period or at the moment the motion to transfer is filed Apparently, the dissent is willing to add the word *"throughout"* to the statute. *See post* at 199.

8. Consistent with the legislature's instruction under the Code Construction Act, we should not focus on verb tense in determining legisla-

tive intent because words in the present tense include the future tense. *See* Tex. Gov't Code Ann. § 311.012 (Vernon 2005).

9. Under the Texas Code Construction Act, "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." Tex. Gov't Code Ann. § 311.011 (Vernon 2005). Our dissenting colleague ignores this basic rule by engaging in grammatical semantics. We choose to follow the legislative admonition and presumption that, "a just and reasonable result is intended," when a statute is enacted. *Id.*

*tinez* 820 S.W.2d at 940–41 (applying former section 11.06(b), which had language similar to sections 155.201(b), 155.202(a) and 155.203, and opining that child's principal residence is not determined by this six-month period, but six-month period may be a guide in determining whether new county of residence is intended to be principal, as opposed to merely temporary residence). The record in this case indicates the Naborses fed, clothed and provided a home for the children in Fort Bend County during the relevant period of time. Our dissenting colleague places emphasis on the last phrase in section 155.203 in order to justify her verb tense analysis of sections 155.201(b) and 155.202(a) with the suggestion that *"during the six month period preceding the commencement of the suit"* means the children must currently reside in the other county or venue will not be mandatory in the other county. The dissent's interpretation is repugnant to the purpose of section 155.203. The dissent implicitly concludes that the children's principal residence will never be in the county where they were actually residing during the statutory six month period if they are simply spirited away from that residence to another county before a motion to transfer venue is filed.

The dissent contends our interpretation of section 155.201(b) conflicts with *In re T.J.L.*, 97 S.W.3d 257 (Tex.App.-Houston [14th Dist.] 2002, no pet.). We are referred to page 264 of that opinion with our dissenting colleagues's statement that this court construed section 155.201(b) to "require that the child be a resident of the other county at the time the suit to modify was filed." *See post* at 205. First, *T.L.J.*, pertained to the question of whether transfer of venue as to one child is required when not all children of a marriage live in the county to which transfer is sought. Our court concluded that Section 155.207(b) of the Family Code requires a court to transfer the proceedings affecting a child to the county where the child resides, even if it retains jurisdiction over another child of the marriage who does not live in the transferee county. The *T.L.J.* court did not interpret or apply section 155.201(b) to answer the specific question presented in this case. Moreover, the court relied on *Cassidy v. Fuller*, 568 S.W.2d 845 (Tex.1978) when it referred to section 155.201(b).[10]

Finally, our dissenting colleague's effort to construe sections 155.201(b) and 155.203 by relying on certain language in *Blacklock v. Miller* is likewise misplaced. 693 S.W.2d 651 (Tex.App.-Dallas 1985, orig. proceeding). In that case, the Dallas Court of Appeals cited and relied on *Chem–Spray Aerosols, Inc. v. Edwards*[11] to support its conclusion that "[t]he critical time with regard to the existence of venue

10. In *Cassidy v. Fuller*, the Supreme Court addressed the predecessor statute to section 155.201(b)—section 11.06(b). 568 S.W.2d 845 (Tex.1978). When the Supreme Court issued *Cassidy*, section 11.06(b) required a showing that venue was proper in another county. *See* Act of May 25, 1973, 63rd Leg., R.S., ch. 543, 1973 Tex. Gen. Laws 1411, 1414. Former section 11.04, which is currently section 103.001, required that an original suit affecting the parent-child relationship "shall be brought in the county where the child resides." *Id.* at 1413. The current section 155.201(b) does not require that the party seeking a transfer to show venue is proper in the transferee county and does not require that the child reside in the transferee county on the same day a motion to modify is filed. Tex. Fam.Code Ann. § 155.201(b). Here, a motion to modify and petition for adoption were filed, not an original suit affecting the parent-child relationship. Consequently, we see no conflict with our interpretation of the statutory language applicable to this case and the Supreme Court's opinion in *Cassidy*.

11. 576 S.W.2d 478 (Tex.Civ.App.-Houston [14th Dist.] 1979, writ dism'd).

facts is the time of filing suit." *Id.* at 652. However, *Chem–Spray Aerosols* is not a family law case,[12] and it is well-established that the Family Code's transfer provisions supplant the rules of procedure and statutes governing venue challenges in other types of civil cases. *See Leonard,* 654 S.W.2d at 441. Therefore, the general rules for establishing venue in civil cases are not applicable to suits affecting the parent-child relationship. *See, e.g., In re Sanchez,* 1 S.W.3d at 914–15 (rejecting argument that motion to transfer venue was untimely because affidavit in support of motion was not served until long after answer date as Family Code does not require that motion to transfer be verified or supported by affidavit); *Mendez,* 761 S.W.2d at 521 (refusing argument that trial court should have considered motion to transfer venue under Rule 86 of Texas Rules of Civil Procedure and Chapter 15 of Texas Civil Practice and Remedies Code).

### CONCLUSION

We hold venue for these proceedings is mandatory in Fort Bend County. Once the Naborses established that the children continuously resided in Fort Bend County for more than six months preceding the filing of the motion to modify and petition for adoption, the trial court had a ministerial duty to transfer the underlying case to Fort Bend County under section 155.201(b) of the Family Code. *See Proffer,* 734 S.W.2d at 673. We therefore conditionally grant the petition for a writ of mandamus and direct the trial court to vacate its order denying the Naborses' motion to transfer, and grant the same.

The writ will issue only if the trial court fails to act in accordance with this opinion.

FROST, J., dissenting.

### DISSENTING OPINION

KEM THOMPSON FROST, Justice.

The majority correctly determines that relators James Madison Nabors and Julia Nabors were not required to present an affidavit in support of their motion to transfer venue and that the Texas Department of Family Protective Services ("Department") is not the "parent" of T.D.P. and D.E.P. (hereinafter the "Children"). But the majority incorrectly determines that the Naborses are entitled to a mandatory venue transfer upon a showing that the Children's principal residence was in Fort Bend County for more than six months at any time in the past. Instead, under the applicable statute as well as precedent from the Supreme Court of Texas and this court, to have been entitled to a mandatory venue transfer under section 155.201(b) of the Texas Family Code, the Naborses had to prove that the Children's principal residence was in Fort Bend County throughout the six-month period ending on the date the Naborses filed the suit to modify. Because the uncontroverted evidence shows that the Children's principal residence was in Harris County during the last fourteen days of this period, the Naborses did not show entitlement to a mandatory venue transfer under the only ground asserted in their motion or under the applicable statute. Accordingly, the trial court did not clearly abuse its discretion by denying the Naborses' motion to transfer, and this court should deny the petition for writ of mandamus.

---

12. *Id.* at 480. The general venue statute at the time of the *Chem–Spray Aerosols* opinion was located at Tex.Rev.Civ. Stat. Ann. art. 1995, and is currently found in Section 15.002 of the Texas Civil Practice and Remedies Code. Tex. Civ. Prac. & Rem.Code Ann. § 15.002 (Vernon 2002).

FACTUAL AND PROCEDURAL BACKGROUND

The Naborses filed both their suit to modify and their motion to transfer venue on November 9, 2007 (the "Filing Date"). In their motion, the Naborses correctly stated the legal standard for a mandatory venue transfer under section 155.201(b) of the Texas Family Code: "[t]he principal residence of the children **is in Fort Bend County, Texas,** and has been in that county during the six-month period preceding the commencement of this suit." [1] This is the only basis upon which the Naborses sought a transfer; yet, they presented no proof that the principal residence of the Children was in Fort Bend County through the Filing Date. Rather, the undisputed evidence before the trial court on February 4, 2008, the date the trial court denied the motion to transfer venue, showed the following:

- Between May 16, 2006 and October 26, 2007, the principal residence of the Children was in Fort Bend County, Texas, with the Naborses.

- Between October 26, 2007, and February 4, 2008, the principal residence of the Children was in Harris County, Texas.

The Children's supervisor at Harris County Children's Protective Services testified as follows:

- The Department has been the sole managing conservator of the Children since August 8, 2007.
- The Department placed the Children with the Naborses as foster parents.
- On October 26, 2007, the Department removed the children from the Naborses' home due to allegations of physical abuse and policy violations that were later validated.
- The Children were then placed in a home in Harris County.
- The Children have not resided with the Naborses since October 26, 2007.
- Since October 26, 2007, the Children have continuously resided in Harris County.

This testimony was not controverted. The evidence before the trial court showed that, from October 26, 2007 forward, including on the Filing Date, the Children's principal residence was in Harris County. Simply stated, the Naborses did not prove the factual predicate asserted in their motion to transfer venue.

THE NABORSES' BURDEN OF PROOF

The Naborses are relators in this original mandamus proceeding. As such, they have the "heavy" burden of presenting a record and petition that show they are entitled to mandamus relief to correct a clear abuse of discretion by the trial court.[2] The inquiry mandated by prece-

---

1. (Emphasis added). In quoting from the ground in the motion, the majority omits the part in which the Naborses allege that the "[t]he principal residence of the children is in Fort Bend County, Texas...." *See ante* at 192. The majority later states that the Naborses moved for a transfer based on the ground that the Children had resided in Fort Bend County for more than six months preceding the filing of the motion to modify. *See ante* at 193. These statements are incorrect. The Naborses did not request a venue transfer on these bases. The Nabors requested a venue transfer based on their allegation that the principal residence of the Children was in Fort Bend County, Texas, on the Filing Date and had been in that county during the six-month period preceding the Filing Date.

2. *See* TEX.R.APP. P. 52.3, 52.7; *Canadian Helicopters, Ltd. v. Wittig,* 876 S.W.2d 304, 305 (Tex.1994) (orig.proceeding); *Walker v. Packer,* 827 S.W.2d 833, 837 (Tex.1992) (orig.proceeding); *In re Nelson,* No. 14–04–00578–CV, 2004 WL 1516156, at *1 (Tex.App.-Houston [14th Dist.] July 8, 2004, orig. proceeding) (mem.op.).

dent is whether the Naborses have established their entitlement to the extraordinary relief of a writ of mandamus, not whether the real party in interest (the Department) has shown that the relators are not entitled to mandamus relief.[3] Indeed, though a court of appeals may not grant mandamus relief without requesting a response, a real party in interest is not required to file a response, and any action or inaction on their part in responding to the mandamus petition is not a proper basis for granting mandamus relief.[4]

According to the majority, the only arguments that the Department asserts in its briefing as to why mandamus should be denied are its arguments as to why the procedures from Chapter 15 of the Texas Civil Practice and Remedies Code apply.[5] The majority states that, even though the Department "limited its appellate argument" to these matters, the majority addresses the proper interpretation of section 155.201(b) because this issue is raised in this dissenting opinion.[6] There is both a factual defect and a legal defect in this reasoning.

Factually, the Department's procedural argument is not the only argument the Department has asserted in this court. Though the Department stresses its procedural argument, it also asserts that Harris County should be considered the Children's county of residence because the Department should be treated as a parent of the Children. In addition, in its briefing, the Department notes that, in its response

in the trial court, the Department pointed out the fact that the Children have been residing in Harris County since October 26, 2007, and have not been residing with the Naborses since that date.

Legally, the majority's reasoning reverses the burden of proof in a mandamus proceeding from the burden imposed by mandatory precedent. There are several possibilities when an appellate court asks a real party to file a response: (1) a real party may brief one or more arguments showing why the relators are not entitled to mandamus relief; (2) a real party may brief one or more arguments in opposition to mandamus relief, none of which have merit; or (3) a real party may exercise its right not to file a response at all. Regardless of which course the real party takes, the relator keeps the "heavy" burden of presenting a record and petition that show the relator is entitled to mandamus relief to correct a clear abuse of discretion by the trial court.[7] The Naborses assert that the trial court clearly abused its discretion by not granting their motion to transfer venue to Fort Bend County under section 155.201(b) of the Texas Family Code. The Naborses have the burden to show that the denial of their motion was a clear abuse of discretion and that they are entitled to mandamus relief to correct it. Therefore, this court needs to address the issue of the proper construction of section 155.201(b) of the Texas Family Code, re-

3.  See Canadian Helicopters, Ltd., 876 S.W.2d at 305; In re Yamin, No. 14–07–01035–CV, 2008 WL 442575, at *1 (Tex.App.-Houston [14th Dist.] Feb. 19, 2008, orig. proceeding) (mem.op.).

4.  See Tex.R.App. P. 52.4; In re Yamin, 2008 WL 442575, at *1 (denying mandamus petition because "[r]elator has not established his entitlement to the extraordinary relief of a writ of mandamus").

5.  See ante at 196.

6.  See id.

7.  See Tex.R.App. P. 52.3, 52.7; Canadian Helicopters, Ltd., 876 S.W.2d at 305; Walker, 827 S.W.2d at 837; In re Nelson, 2004 WL 1516156, at *1.

gardless of the arguments asserted by the Department.

### THE LANGUAGE OF SECTION 155.201(B)

When a party files a modification suit and a motion for mandatory transfer, the party is entitled to a mandatory transfer "if the child has resided in the other county for six months or longer."[8] Therefore, for the Naborses to be entitled to a mandatory transfer to Fort Bend County, the Children must "have resided" in Fort Bend County for six months or longer as of the Filing Date. The verb forms "has resided" and "have resided" are in the present perfect tense. This tense either (1) represents an action as having been completed at some indefinite time in the past, or (2) indicates that an action continues to the present.[9] If the first sense of the present perfect tense applies to section 155.201(b), then a child may have resided in various counties for at least six months at some indefinite time in past, prior to the filing of the modification suit. If the second sense of the present perfect tense applies, then the child would have had to reside in the other county for at least six months up to and including the date on which the modification suit was filed.[10] To see which sense was intended, this court should look to other parts of the statute.

Under section 155.202(a), "[i]f the basis of a motion to transfer a proceeding under this subchapter is that the child *resides* in

another county, the court may deny the motion if it is shown that the child has resided in that county for less than six months at the time the proceeding is commenced."[11] Section 155.201(b) provides the only basis for transferring a proceeding under this subchapter that is based on the residence of the child. Therefore, in section 155.202, the legislature describes a transfer under section 155.201(b) as being based on an allegation that "the child *resides* in another county."[12] Thus, section 155.202(a) is strong support that the legislature intended the second sense of the present perfect tense in section 155.201(b).

The language in section 155.201(b) "if the child has resided in *the other county* for six months or longer" shows that the legislature envisioned that there would be only one other county.[13] This language is consistent with the legislature intending the second sense of the present perfect tense in section 155.201(b), and it is inconsistent with the legislature intending the first sense of the present perfect tense in section 155.201(b).

Under section 155.203, courts determining a child's residence must examine the child's principal residence throughout the six-month period preceding the commencement of suit.[14] Section 155.203 shows that the legislature intended the second sense of the present perfect tense in section

---

8. TEX. FAM.CODE ANN. § 155.201(b) (Vernon 2008).

9. Bryan A. Garner, *Garner's Modern American Usage* 779 (Oxford University Press 2003).

10. While the majority criticizes this grammatical analysis of the applicable statute, it also cites the part of the Code Construction Act, in which the legislature states that "words and phrases shall be read in context and construed according to the rules of grammar and common usage." TEX. GOV.CODE ANN. § 311.011(a) (Vernon 2005); *see ante* at 197.

11. *See* TEX. FAM.CODE ANN. § 155.202(a) (Vernon 2008) (emphasis added).

12. *See id.* (emphasis added).

13. *See* TEX FAM.CODE ANN. § 155.201(b) (emphasis added).

14. TEX. FAM.CODE ANN. § 155.203 (Vernon 2008) (emphasis added).

155.201(b), rather than the first sense.[15] The majority incorrectly concludes that the legislature intended the first sense of the present perfect tense, which would mean that the child only has to have resided in the other county for at least six months at some indefinite time in the past, before the modification suit was filed.[16]

Based on the language of Texas Family Code section 155.201(b) and related statutory provisions, for the trial court to have been required to transfer venue to Fort Bend County, the Children's principal residence must have been in Fort Bend County throughout the six-month period ending on the Filing Date.[17] The majority states

that this analysis adds to the statute words not contained therein and that, if the legislature wanted to require the child to be residing in the transferee county when suit was filed, it could have said so.[18] However, no words have been added to the statute in this dissenting opinion; rather, the objective of this statutory analysis is to seek the meaning of the words used. Courts should not ignore what is, based on what might have been.[19] That is, the fact that the legislature could have used more precise or clearer words does not change the court's mission to give effect to the words actually used. Because there is sufficient evidence to support an implied find-

---

**15.** The majority states that courts should not base their construction of a statute on the verb tense used by the legislature because the Code Construction Act states that "words in the present tense include the future tense." Tex. Gov.Code Ann. § 311.012(a) (Vernon 2005); *see ante* at 197, n. 8. However, if section 155.201(b) also includes the future tense, then the part of the statute focusing the inquiry on the six-month period before filing of the suit would be rendered meaningless. Though the Code Construction Act was in effect when the Supreme Court of Texas decided *Cassidy v. Fuller*, the high court still construed the applicable statutes as requiring a transfer to the county in which the child resides and has resided for at least six months; the *Cassidy* court did not conclude that under the Code Construction Act, a transfer is also required to the county in which the child will have resided for more than six months in the future. *See* Act of May 24, 1967, 60th Leg., R.S., ch. 455, § 2.02, 1967 Tex. Gen. Laws 1036, 1037; *Cassidy v. Fuller*, 568 S.W.2d 845, 846–47 (Tex.1978). Research has not revealed any Texas case that has used section 311.012(a) of the Texas Government Code in interpreting a statute. *See Brown v. Blum*, 9 S.W.3d 840, 845–46 (Tex. App.-Houston [14th Dist.] 1999, pet dism'd w.o.j.) (declining to use section 311.012(a) of the Texas Government Code in interpreting a statute).

**16.** This is the principal legal standard articulated in the majority opinion. *See ante* at 193, 194, 196, 199 (stating that, for the Na-

borses to be entitled to a mandatory transfer to Fort Bend County, the Children must have resided in Fort Bend County for six months or longer "preceding" the filing of the modification suit).

**17.** *See* Tex. Fam.Code Ann. §§ 155.201(b), 155.204(b); *Cassidy*, 568 S.W.2d at 846–47; *In re T.J.L.*, 97 S.W.3d 257, 263–65 (Tex.App.-Houston [14th Dist.] 2002, no pet.); *In re Wheeler*, 177 S.W.3d 350, 353–54 (Tex.App.-Houston [1st Dist.] 2005, orig. proceeding); *Blacklock v. Miller*, 693 S.W.2d 651, 652 (Tex. App.-Dallas 1985, orig. proceeding) (denying mandamus relief because, even though children's principal residence may have been in different county for more than six months in the past, the children's principal residence changed from that county 12 days before filing of suit to modify and therefore, their principal residence was not in that county on the day suit was filed). The majority suggests that the *Blacklock* court erroneously applied general venue principles that conflicted with the Family Code. *See ante* at 199. This is incorrect. The *Blacklock* court quoted and applied former section 11.06(b); it did not apply general venue principles that are contrary to the requirements of the Family Code. *See Blacklock*, 693 S.W.2d at 652.

**18.** *See ante* at 196–97.

**19.** *See Air Routing Int'l Corp. (Canada) v. Britannia*, 150 S.W.3d 682, 700 (Tex.App.-Houston [14th Dist.] 2004, no pet.).

ing that the Children's principal residence was not in Fort Bend County for the last fourteen days of this period, the trial court did not abuse its discretion by denying the motion to transfer.[20] Therefore, this court should deny the mandamus petition.[21]

## CONFLICT WITH PRECEDENT FROM THE SUPREME COURT OF TEXAS

The majority's analysis and disposition conflicts with the Supreme Court of Texas's decision in *Cassidy v. Fuller*.[22] In *Cassidy*, a father filed a motion to modify the divorce decree slightly more than six months after the decree was rendered in Reeves County.[23] At the same time, the father filed a motion to transfer venue of the proceeding to Clay County based on the undisputed fact that his children resided there and had resided there for more than six months.[24] The trial court denied the motion to transfer, but the *Cassidy* court held that the trial court clearly abused its discretion in doing so.[25] The

*Cassidy* court concluded that the legislature intended venue for suits affecting the parent-child relationship to generally be in the county in which the child resides.[26] The high court stated that usually the current circumstances affecting the child may be best shown in the county in which the child resides.[27]

When *Cassidy* was decided, former section 11.06(b) contained language similar to the language now contained in sections 155.201(b), 155.202(a), and 155.203 of the Texas Family Code.[28] The *Cassidy* court held that former section 11.06(b) required transfer of the proceeding to the county in which the child was residing and had resided for more than six months; however, the trial court had discretion to deny motions for change of venue based on the child's residence in another county if the child had resided in the other county for less than six months.[29] The *Cassidy* court noted that this provision operated to "forestall

---

**20.** *See* TEX. FAM. CODE ANN. § 155.201(b); *Blacklock*, 693 S.W.2d at 652. The majority relies on *In re Kerst* and *In re Gore;* however, these cases involved children whose principal residence was in the other county during the six-month period preceding the commencement of suit. *See In re Kerst*, 237 S.W.3d 441, 442, 444–45 (Tex.App.-Texarkana 2007, no pet.); *In re Gore*, No. 07–07–0290–CV, 2007 WL 2403366, at *1–2 (Tex.App.-Amarillo Aug.23, 2007, orig. proceeding) (mem.op.). Therefore, these cases are consistent with the analysis in this dissenting opinion.

**21.** In the same motion to transfer, the Naborses asserted in the alternative that they were entitled to a discretionary transfer under section 155.202(b). Though the Naborses seek mandamus as to the trial court's denial of their motion, which would include the denial of this relief, the Naborses' petition does not contain any argument, analysis, record citations or legal authority in support of the proposition that the trial court clearly abused its discretion in denying this part of the motion. *See* TEX.R.APP. P. 52.3(h). Therefore, they have waived this issue. *See In re Citizens*

*Supporting Metro Solutions, Inc.*, No. 14–07–00190–CV, 2007 WL 4277850, at *4 (Tex. App.-Houston [14th Dist.] Oct. 18, 2007, orig. proceeding).

**22.** *See* 568 S.W.2d at 846–47.

**23.** *See id.*

**24.** *See id.*

**25.** *See id.*

**26.** *See id.* at 847 (relying on statutory language similar to that currently codified at section 103.001 of the Texas Family Code).

**27.** *See id.*

**28.** *See* Act of May 25, 1973, 63rd Leg., R.S., ch. 543, 1973 Tex. Gen. Laws 1411, 1414 (amended 1981, recodified 1995, amended 1999) (current version at TEX. FAM.CODE ANN. §§ 155.201(b), 155.202(a), 155.203).

**29.** *See Cassidy*, 568 S.W.2d at 847.

forum shopping."[30] Though the *Cassidy* court did not explicitly state how this statute did so, it is clear from the opinion that the high court concluded that the statute forestalled forum shopping by preventing a party from changing the child's residence for a brief period to obtain a mandatory venue transfer.[31] Instead, to obtain a mandatory venue transfer, the movant would be required to show the child was residing in the other county and had been residing in that county for at least six months at the time the petition to modify was filed.[32]

Under the majority's interpretation of section 155.201(b), instead of preventing forum shopping, the statute is construed to promote forum shopping, by allowing a party to obtain a mandatory venue transfer to any county in which the child resided for at least six months at some time in the past. Given our increasingly mobile society, children very well may reside in a number of different Texas counties for at least six months before they reach adulthood. Today's interpretation allows a party to shop among all of these counties before choosing which county the party would like to be the county in which the court of continuing, exclusive jurisdiction is located. In addition, if a party is not pleased with the trial judge in the first county to which the case is transferred, the party then could file a motion to enforce or perhaps a second petition to modify and invoke section 155.201(c) to mandate a second transfer to one of the other counties in which the child resided in the past for at least six months.[33] The majority's statutory construction conflicts with the *Cassidy* decision.

### CONFLICT WITH THIS COURT'S PRECEDENT

In addition, in *In re T.J.L.*, this court construed section 155.201(b) to require that the child be a resident of the other county at the time the suit to modify was filed before a party could be entitled to a mandatory venue transfer under section 155.201(b) of the Texas Family Code.[34] This court held that the trial court erred in denying a party's motion to transfer under section 155.201(b) based on the allegation and undisputed evidence that the child resided in another county during the six-month period ending on the date the petition to modify was filed.[35] By holding that section 155.201(b) does not require the child to reside in the other county when the petition to modify is filed, the majority creates a conflict with this court's prior decision in *In re T.J.L.*[36]

### CONFLICT WITH THE LANGUAGE OF THE STATUTE

In section 155.202(a), the legislature described a transfer under section 155.201(b) as being based on an allegation that "the child *resides* in another county."[37] By holding that section 155.201(b) does not require the child's principal residence to be in the other county when the petition to

---

30. *Id.*

31. *See id.*

32. *See id.*

33. *See* TEX. FAM. CODE ANN. § 155.201(c).

34. *See In re T.J.L.*, 97 S.W.3d at 264.

35. *See id.* at 260, 264–65.

36. *See id.* In *In re Wheeler*, the First Court of Appeals adopted this court's analysis in *In re T.J.L. See* 177 S.W.3d 350, 353–54 (Tex.App.-Houston [1st Dist.] 2005, orig. proceeding). Therefore, the majority's analysis also conflicts with the First Court of Appeals's decision in *In re Wheeler. See id.*

37. *See* TEX. FAM. CODE ANN. § 155.202(a) (emphasis added).

modify is filed, the majority renders meaningless this language in section 155.202(a).

The majority's analysis also conflicts with language in section 155.201(b): "if the child has resided in *the other county* for six months or longer." [38] The italicized words clearly show that the legislature envisioned that there would be only one "other county." This is consistent with the requirement that the child be a resident of the other county at the time the suit to modify is filed before a party could be entitled to a mandatory venue transfer under section 155.201(b) of the Texas Family Code. It is inconsistent with the majority's analysis.

The majority's analysis also conflicts with the following emphasized language in section 155.203:

> In computing the time during which the child has resided in a county, the court may not require that the period of residence be continuous and uninterrupted but shall look to the child's principal

residence *during the six-month period preceding the commencement of the suit.*[39]

In their motion, the Naborses asserted that the Children's principal residence was in Fort Bend County throughout the six-month period preceding commencement of the modification suit; however, the majority applies a different and incorrect standard, namely, whether the Children had a principal residence in Fort Bend County during any six-month period before commencement of the suit.[40]

Under section 155.203, courts determining a child's residence must examine the child's principal residence throughout the six-month period preceding the commencement of suit and must not require uninterrupted or continuous presence.[41] Under the plain meaning of section 155.203, there may be more than one county of principal residence during the six months preceding the commencement of suit.[42] In this case,

---

**38.** *See* Tex. Fam.Code Ann. § 155.201(b) (emphasis added).

**39.** Tex. Fam.Code Ann. § 155.203 (Vernon 2008) (emphasis added).

**40.** *See ante* at 193, 194, 196, 199.

**41.** For example, if prior to October 26, 2007, the Naborses had spent two weeks visiting relatives in Harris County, that would not mean that the Children's principal residence would switch to Harris County during this period. In this case, the uncontroverted evidence shows that the Children were continuously present in Fort Bend County from May 16, 2006 through October 26, 2007, and continuously present in Harris County after October 26, 2007. Therefore, the trial court had no occasion to require continuous presence in the county of residence. The majority cites *Martinez v. Flores.* See 820 S.W.2d 937 (Tex.App.-Corpus Christi 1991, no writ). The *Martinez* court held that the children's extended visitation period with their father, who did not have the right to designate their residence, did not change the children's residence from the county designated by the

Children's mother. *See id.* at 939–41. This holding is consistent with the analysis in this dissenting opinion. The *Martinez* court does state in an obiter dictum that the six-month period stated in the predecessor statute to section 155.201(b) is meant as a "guide" and that courts can look beyond the six-month period to determine whether the children's residence has changed to a new county. *See id.* at 940. This dictum is contrary to the plain meaning of the statute, and, prior to today's decision, had not been cited by any court.

**42.** *See* Tex. Fam.Code Ann. § 155.203; *Blacklock*, 693 S.W.2d at 652 (denying mandamus relief because, even though children's principal residence may have been in different county for more than six months in the past, the children's principal residence changed from that county 12 days before filing of suit to modify and therefore, their principal residence was not in that county on the day suit was filed).

In part of its opinion, the majority suggests that, under section 155.203, this court should

the Children had a principal residence in Fort Bend County for most of the six-month period before commencement of suit; notably, however, they did not have a principal residence in Fort Bend County during the last fourteen days of this period.[43] Therefore, the trial court had discretion to deny the motion to transfer.[44] The trial court's denial does not constitute an abuse of discretion.

### CONCLUSION

The Naborses stated the correct legal standard in their motion to transfer venue but failed to establish the necessary factual predicate to prevail on their motion. Based on the evidence before it, the trial court did not abuse its discretion in deny-

ing their motion to transfer venue. Today, this court constructs a new legal standard that contradicts the language of the applicable statute as well as decisions from the Supreme Court of Texas and this court. Under the correct legal standard, the Naborses have not established their entitlement to mandamus relief. Therefore, this court should deny their mandamus petition. Because it does not, I respectfully dissent.

look to the six-month period preceding suit and determine which county was the child's principal residence for the majority of this period. *See ante* at 197–98. This construction conflicts with the plain meaning of the statute and the *Blacklock* decision. *See* TEX. FAM.CODE ANN. § 155.203; *Blacklock*, 693 S.W.2d at 652. In addition, language substantially similar to the language of section 155.203 was contained in former section 11.06(b). *See* Act of May 25, 1973, 63rd Leg., R.S., ch. 543, 1973 Tex. Gen. Laws 1411, 1414. Therefore, this construction also conflicts with *Cassidy* and *In re T.J.L.*, which require the child to be currently residing in the other county, rather than to have a principal residence in that county for a majority of the six-month period prior to suit. *See Cassidy*, 568 S.W.2d at 846–47; *In re T.J.L.*, 97 S.W.3d at 263–65.

**43.** The majority is simply wrong when it states that, under the analysis in this dissenting opinion, removing children from one

county to another for a few days or a few hours would thwart an otherwise meritorious motion to transfer venue under section 155.201(b). *See ante* at 196–97, n. 6, 198. If parties were to engage in such manipulative behavior, the trial court would be justified in concluding that the children's principal residence had not changed. Of course, if the evidence shows that children in a particular case had a bona fide change of their principal residence back to the county of the original court of continuing jurisdiction shortly before a timely motion to transfer was filed, then the facts simply would not satisfy the bright-line rule established by the legislature for determining when the county for the court of continuing jurisdiction must be changed. *See* TEX. FAM.CODE ANN. § 155.201(b); *Blacklock*, 693 S.W.2d at 652.

**44.** *See* TEX. FAM.CODE ANN. § 155.201(b); *Cassidy*, 568 S.W.2d at 846–47; *In re T.J.L.*, 97 S.W.3d at 263–65; *In re Wheeler*, 177 S.W.3d at 353–54; *Blacklock*, 693 S.W.2d at 652.